Per Curiam :
This case was referred to Trial Commissioner Saul Diehard Gamer with directions to make recommendation for conclusions of law on plaintiff’s motion and defendant’s cross-motion for summary judgment. The commissioner has done so in an opinion and report filed on February 18, 1966. On March 23, 1966, plaintiff filed exceptions to the commissioner’s report which was deemed a request for review by the court under Pule 55(b) (3), and the case has been submitted to the court without oral argument by plaintiff and with a short statement by defendant’s counsel. Since the court is in agreement with the report, opinion and recommendation of the trial commissioner, it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Plaintiff’s motion for summary judgment is therefore denied, defendant’s cross-motion is granted and plaintiff’s petition is dismissed.
OPINION OF COMMISSIONER*
Gamer, Commissioner:
As part of its June 10, 1954 contract with the Army Corps of Engineers for the construction of a “Special AAA Control Area” near Davidsonville, Maryland, plaintiff was to erect a Mess Hall. On October 15, 1954, a hurricane (“Hazel”) struck the work area. At that time the Mess Hall building was only partially completed. The concrete floor was laid and the walls built, but the roof was not as yet installed. The hurricane partially destroyed the walls, necessitating reconstruction work.
Plaintiff says that, had the roof been on the building, it would have prevented the collapse of the walls. Apparently there is no real dispute about this, and the case has proceeded on that assmnption. Plaintiff’s case is based on the contention that it was defendant’s fault that the roof was not installed by such October 15 date, and that the cost of the reconstruction (alleged to be $3,215.80) should therefore *1097 be borne by defendant. It contends that by stop orders, outstanding for an imreasonable length of time, defendant wrongfully delayed plaintiff and prevented it from proceeding with the roof installation work.
Plaintiff’s contract contained, in the “General Conditions” part of the specifications, a clause labeled “GC-11. SUSPENSION OF WORK”, which provides that the contracting officer could, for the Government’s convenience, suspend all or any part of the work for such time as he considered necessary or desirable and that, “Unless such suspension unreasonably delays the progress of the work and causes additional expense or loss to the Contractor,” no increase in contract price would be allowed. The clause further provides, however, that if the suspension was for an unreasonable length of time and did cause additional expense not attributable to the contractor’s fault, the contracting officer “shall make an equitable adjustment in the contract price.”
Based on such SUSPENSION OF WORK provision, plaintiff requested the contracting officer to issue an equitable adjustment to cover the cost of rebuilding the walls. Upon denial of the claim by the contracting officer, plaintiff, under the DISPUTES clause of the contract (GP 6), first appealed to the Corps of Engineers Board of Contract Appeals, which, after a full hearing, sustained the contracting officer’s action, and then to the Armed Services Board of Contract Appeals (ASBCA) which, after another such hearing, also denied relief (ASBCA No. 5255, November 29, 1960). This suit, alleging plaintiff’s loss to be attributable to unreasonable delay caused by defendant, and characterizing the boards’ decisions as arbitrary and not supported by substantial evidence, followed.
After a ruling by this court that, pursuant to United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963), the issues herein were to be decided only on the basis of a review of the administrative record, plaintiff filed a motion for summary judgment and defendant has cross-moved.
The ASBCA found that, immediately after plaintiff was given notice to proceed in June 1954, several stop and change orders were issued which did indeed, for a time, prevent *1098 plaintiff from working on the Mess Hall. It farther found, however, that during August 1954, the Mess Hall became free of stop order and that in that month plaintiff did actually proceed with such work, completing the walls by the end of August 1954. While the roof still was not installed that month because plaintiff conveyed the concrete for the floor slab by crane and bucket over the walls, nevertheless the Board found that the floor slab was completed on September 28,1954, and that plaintiff could have thereafter proceeded with the installation of the roof, which could have been placed in not more than five days. Thus the Board concluded that plaintiff could easily have had the roof on the building before the hurricane struck and that its failure to do so was not attributable to any then outstanding stop order. “The evidence before us”, said the Board, “will not support a finding that work on the mess hall was suspended between 28 September and 15 October 1954, either by express stop order or by other act of the Government”, and that “The decision to construct the walls and floor when it did [i.e., in August and September 1954], as well as the decision to cease work after the floor was laid [i.e., on September 28, 1954], was that of the appellant.”
By its motion, plaintiff attacks the ASBCA decision on the grounds that it “is not based upon facts as stated.” Presumably plaintiff means by this statement that the Board’s findings are contrary to the evidence which was presented to it.
However, if plaintiff is, therefore, seeking a review by this court of all of the testimony and exhibits introduced before the Board so that the court, upon such reconsideration and independent analysis, may make new factual findings based on its own appraisal, then plaintiff’s request must be denied. In a case in which it is determined that United States v. Carlo Bianchi & Co., supra, applies, all that the court may do is to review the evidence, not for the purpose of making new or independent findings, but only to ascertain “whether there was substantial evidence in the record as a whole before the Board to justify its conclusion.” Carlo Bianchi & Co. v. United States, 167 Ct. Cl. 364, 368 (1964), *1099 cert. denied, 382 U.S. 841 (1965). That the court, were it free to make a fresh analysis and appraisal, “might have decided as an original matter with plaintiff on balance” {id.), is immaterial. The review of any factual findings can consequently be only of such limited character.
Plaintiff contests the Board’s conclusion that all stop orders which prevented work from proceeding on the Mess Hall were lifted by August 1958. It points to three letters from defendant dated August 9, 26, and 27,1954 (all set forth or referred to in the Board opinion), which, it contends, if properly construed, did serve to prevent it from proceeding with Mess Hall work through October 15, the date of the hurricane.
However, even giving full scope to the rule that the interpretation of documents is a legal question and that therefore the Board’s decision with respect thereto is not vested with Wunderlich Act finality (68 Stat. 81, 41 U.S.C. §§ 321-322 (1958 ed.); Blount Brothers Construction Co. v. United States, 171 Ct. Cl. 478, 346 F. 2d 962 (1965) and cases therein cited), an examination of these three letters wholly fails to support plaintiff’s position.
The first letter upon which plaintiff relies, the letter of August 9, 1954, is not a separate Board exhibit. The letter is simply referred to in an exchange of correspondence between plaintiff and defendant which occurred in October 1954, i.e., a letter by plaintiff dated October 2,1954, complaining about the stop orders theretofore issued and the disruptive effect they were allegedly having upon plaintiff’s work, and a response by defendant dated October 12, 1954.
Plaintiff’s October 2 letter charged that “From the very outstart of this contract, approximately 90% of the work has been delayed, affected or stopped by changes” and that as of the date of the letter it could not, without difficulty, proceed with certain listed items of work, including the “Mess Hall” (listed as item 6). The letter further recited that, although defendant had, by its letter of August 9,1954, stated that as of that date the “information” furnished by defendant on the Mess Hall (and certain other items) was “adequate for commencement of construction”, defendant *1100 bad, by a further letter of August 27,1954, once more stopped such work so that, as of such date of October 2,1954, “again information is inadequate.”
Defendant’s October 12 reply also referred to its letter of August 9, 1954, and the statement contained therein concerning the then adequacy of construction information. It denied, however, that the subsequent stop* order contained in the letter of August 27, affected the Mess Hall or changed in any way the situation as set forth in the August 9 letter concerning such building. It flatly stated “The Mess Hall design is adequate” and added: “This office should be contacted immediately if you need clarification on the Mess Hall * * It denied plaintiff’s statement concerning 90 percent of the contract work having been delayed, asserting that “At no time has more than 65% of the work been stopped by the Government” and that, as of the date of the letter (October 12) only “approximately 45% of the work not completed is stopped.” The letter closed with the statement that the Mess Hall item (and two others listed by plaintiff) “are not stopped by the Government” and that “The failure to proceed on these items * * * is the fault of the contractor and in no way can be considered stopped by the Government.”
Plaintiff refers to and relies upon the August 9 letter (as set forth and referred to in said October 2 and 12 letters) as proof that, as of that date, some “45% of the work had been stopped.” (Plaintiff’s motion, p. 2.) Plowever, the significance of the contention is not understood. In the first place, it was not defendant’s August 9 letter that made the statement. As shown, it was defendant’s October 12 letter that referred to the 45 percent stoppage, the reference being to October 12, and not August 9. Secondly, the statement is of no relevance anyway, even if it could in some manner be construed as referring to the status of the work on August 9. It would not make the slightest difference how much work had been stopped prior to August 9. The nub of the controversy is the stop order status of the project work after August 9, and particularly as of October 15, the date of the hurricane.
The second letter upon which plaintiff relies, dated August 26, 1954, is also set forth in the Board opinion. It *1101 suspended “All work on overhead electric lines and 3-inch cold water lines” (as indicated on a certain contract drawing) “between the property lines of the control area [the instant contract] and launcher area [a separate contract which plaintiff also had]”, and stated that “No further work will be performed in this area until a property easement is obtained from the land owner.”
What effect this August electric and water line stop order, involving an easement problem, could possibly have on the Mess Hall situation in October is hi no way apparent, nor. does plaintiff elucidate. Merely showing that some work on this project was stopped somewhere at some time is meaningless.
The third letter upon which plaintiff relies, dated August 27, 1954, has already been mentioned, having been referred to in the October correspondence exchange. As shown, plaintiff’s letter of October 2 charged that this August 27 letter had the effect of stopping work on the Mess Hall.
By this letter of August 27 (which is also set forth in the Board opinion), defendant, “Pending revision of construction drawings,” stopped all contract work “on the barrack pads and latrines”, including “all allied plumbing, heating and electrical work in these areas.”
Plaintiff argues that, considering the 45 percent of the work stopped as of August 9,1954 (which plaintiff deduces is an admission made by defendant’s October 12 letter), the new stoppages effected by the aforesaid letters of August 26 and 27, added to the 45 percent, “created a total of 90% work stoppage on the contract as contended by the Contractor.” (Plaintiff’s motion, p. 2.)
But here again plaintiff’s contention leaves us in a quandary. No explanation is given as to how the 90 percent figure is arrived at, nor (considering the hurricane date as the crucial one), when such 90 percent stoppage was in effect even if the figure is accepted, or what relationship any such percentage would, in any event, have to the Mess Hall work. Not only is plaintiff’s motion completely lacking in support for the 90 percent figure but it in no way explains its relevance to what the controversy between the parties is said to be.
*1102 As stated, the August 27 letter, stopped all contract work on the barrack pads and latrines, including “all allied plumbing, heating and electrical work in these areas.” Assuming this order could affect in some manner some Mess Hall work — although plaintiff in no way indicates whether this is so, or if so, how much of an effect it would have — there is no showing how it could possibly affect the roof work. While large-scale changes in plumbing, heating, and electrical work would obviously affect the construction of the building itself in some way, this stop order was a limited one. It only stopped such “allied” work in the limited “areas” involved in the stop order. The order obviously did not affect the construction of the Mess Hall walls and floor, since plaintiff did in fact proceed therewith, completing them on September 28.
Not only is the effect of this August 27 stop order on the Mess Hall in general and its roof in particular unexplained but, as shown, defendant, even before this hurricane controversy ever arose, took the position, by its October 12 letter, that it had no such effect at all.[1]
Since reliance on such three letters constitutes the full extent of plaintiff’s motion, it is apparent that it must be denied. Whether the aspect of the Board’s decision which plaintiff attacks — i.e., the status of the project on the hurricane date as shown by the three letters upon which plaintiff relies — be considered as a question of fact, law, or mixed fact and law, makes no difference, for, on any basis or standard of review, plaintiff’s showing is insufficient to upset the decision. Cf. Chase & Rice, Inc. v. United States, 173 Ct. Cl. 740, 354 F. 2d 318 (1965). The Board found, after a detailed examination of the evidence, pertinent parts of which it set forth in its opinion, that the status of the project as of early August 1954 was such that plaintiff could proceed with the Mess Hall construction, that plaintiff did in fact progress with the wall and floor portions of the building, that the roof could have been completed before the hurricane, that under express con *1103 tract provisions plaintiff was responsible for tbe work until final acceptance,[2] and tliat plaintiff, having failed to show its loss resulted from any unreasonably long work suspension, was not entitled to an equitable adjustment under the SUSPENSION OF WOEK clause. Plaintiff has not carried its burden of showing wherein these findings and conclusions are in any way erroneous, either on the basis of a lack of substantial evidence or any error of law.[3]
Accordingly, plaintiff’s motion for summary judgment should be denied, defendant’s cross-motion granted, and plaintiff’s petition dismissed.

The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The facts are stated to the opinion.

 As shown by the Board decision, defendant’s resident engineer, who signed both the letters of August 26 and 27, testified that these letters were not intended to stop work on the Mess Hall, and that, contrary to plaintiff’s testimony, the work that plaintiff subsequently accomplished upon the Hall was not performed with his special permission.

 Under section GP [General Provisions] 11, PERMITS AND RESPONSIBILITY FOR WORK, ETC., the contractor was made “responsible for all materials delivered and work performed until completion and final acceptance * *

 Before tbe Board, plaintiff, in additional support of its contention that tbe project was under stop order at tbe time of tbe hurricane, also claimed that, after it had completed the Mess Hall walls and floor on September 28, it could not proceed with the roof construction because it then became known that defendant was considering changes in the mechanical work which could affect the roof, and that it was therefore agreed between plaintiff’s and defendant’s representatives at a meeting held on October 2, 1954, that work on the Hall should be suspended pending the receipt of the changes. On October 18 — three days after the hurricane — certain revised drawings (which in no way affected the Mess Hall roof) were submitted to plaintiff.
This testimony was controverted by defendant’s witness, and the Board, relying also on defendant’s contemporaneous letter of October 12, 1954, which, as shown, specifically denied that the Mess Hall was then under stop order, rejected it. Plaintiff does not, in its motion herein, even mention this aspect of the case upon which it placed such reliance before the Board. The Board’s refusal to find any stop order emanating from any meeting held on October 2, 1954 must therefore stand.