**TROUP BROS., INC.**

v.

**The UNITED STATES**

**No. 66–79.**

United States Court of Claims.

July 16, 1980.

Philip M. Cronin, Boston, Mass., Atty. of Record, for plaintiff. Withington, Cross, Park & Groden, Boston, Mass., of counsel.

Lynn J. Bush, Washington, D.C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C., for defendant. John D. Brady, Dept. of the Army, of counsel.

Before SKELTON, Senior Judge, and NICHOLS and SMITH, Judges.

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**PER CURIAM:**

This case comes before the court on plaintiff's request, filed December 18, 1979, for review of the recommended decision of Trial Judge James F. Merow, filed November 20, 1979, pursuant to Rules 166(c) and 54(b)(1), on defendant's motion for summary judgment, having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby adopts and affirms the decision as the basis for its judgment in this case. Accordingly, plaintiff is not entitled to recover, defendant's motion for summary judgment is granted, and the petition is dismissed.

### OPINION OF TRIAL JUDGE *

MEROW, Trial Judge: This matter is before the court on: (1) defendant's motion for summary judgment asserting that the decision of the Corps of Engineers Board of Contract Appeals in *Appeal of Troup Brothers, Inc.,* No. 3799, 78–2–BCA ¶ 13,509, should be upheld; and (2) plaintiff's opposition to this motion. Plaintiff does not cross–move for summary judgment because it seeks a reference of the proceeding " * * * to a Trial Judge for trial."

The dispute between the parties had its genesis in the December 19, 1975 award to plaintiff of Corps of Engineers Contract No. DACW17–76–C–0037, in the estimated amount of $2,957,792.50. In relevant part,

---

* The opinion and recommended conclusion of law are submitted in accordance with Rule 166(c) and Rule 54(b)(1). The necessary facts are stated in the opinion.

this contract provided for the construction of three flood control spillway structures (designated S–333, S–334, S–336) in the western part of Dade County, Florida. The contract required the use of a steel sheet pile cofferdam in the construction of each structure.

The issues presented for resolution in this litigation are whether: (1) for structure 334 the contract as awarded permitted the contractor, at the close of construction, to pull the steel sheet pile cofferdam, such that the steel sheet piles for S–334 could have been rented during construction; or (2) whether the contract required that the S–334 steel sheet piles be cut off so that a bottom portion would be left in place, thus requiring the purchase of piles by the contractor for this structure.

By a letter dated February 20, 1976 to Troup Bros., Inc., its subcontractor for the work at issue, Metro Metals, Inc., inquired, in pertinent part, as follows:

In our efforts to obtain a sub–contractor to furnish and drive the dewatering cofferdams on the above named project a number of different methods have been discussed and proposed. The intent of this letter is to get a ruling from the Corps of Engineers on the method to be utilized for Structure 334. It was at the time of bid and is now our interpretation that the temporary dewatering sheet pile cofferdam would be pulled out rather than cut off.

\* \* \* \* \* \*

In order that we may proceed in the most economical manner, it is imperative that we receive a confirmation from the contracting officer of our interpretation regarding the temporary cofferdam piling. If that is not the contracting officer's interpretation, then our claim for the additional cost involved will be submitted as soon as we can prepare an estimate based upon the loss of, and the cost of the cut–off of the piling left in the ground.

By letter dated February 23, 1976, Troup Bros., Inc., forwarded its subcontractor's February 20, 1976 letter to the Corps of Engineers (Corps). By letter dated March 4, 1976 the contracting officer informed Troup Bros., Inc., that "\* \* \* the only reasonable interpretation is that the steel sheet piling will be cut off at the top of the tremie seal concrete, with the cut off portion to be removed and the lower portion to remain in place." By its letter of March 29, 1976 on behalf of its subcontractor (Metro Metals, Inc.), Troup Bros., Inc., submitted a claim, under the "Disputes" clause of Contract No. DACW17–76–C–0037 for the asserted extra cost of cutting off the steel sheet piles of the cofferdam at S–334. On May 11, 1976, the contracting officer issued his decision denying the claim. Plaintiff appealed the matter to the Corps of Engineers Board of Contract Appeals (Board), where it was docketed as No. 3799. Testimony on No. 3799 was presented before the Board on November 8, 9 and 21, 1977 from the following witnesses: John B. Rowland, civil engineer and representative of plaintiff and its subcontractor, Metro Metals, Inc.; Brit Sanford, a general contractor; Beecher Hammond, estimator for Metro Metals, Inc.; Robert G. Elrod, Sr., Office Engineer and Assistant Chief of Construction, Miami Area Office, Corps of Engineers; Abbey Ira Foster, Chief of Foundations and Materials Branch, Jacksonville Office, Corps of Engineers; Harl P. Aldrich, Jr., president of Haley and Aldrich, Cambridge, Massachusetts (consulting engineers); David A. Cowdrey, estimator, Jacksonville Office, Corps of Engineers. Following the filing of briefs by the parties, on October 11, 1978 the Board issued its decision denying Appeal No. 3799 on the issue of entitlement. The question of damages was reserved for a further proceeding, if required. The instant litigation then ensued with the filing of plaintiff's petition on February 22, 1979.

The specifications principally involved in this matter are those set forth in section 2E, "Structure Site Conditions, Bypass Channel, and Dewatering." Section 2E–3 covered S–333 and section 2E–4 covered both S–334 and S–336, as follows:

\* \* \* \* \* \*

2E–3.1 Except as noted below, all work for Structure 333 shall be performed in areas free from water. Excavation, except as noted in paragraph 2D–3.2.1, placement of stone protection, clearing, grubbing, stripping, construction of the steel sheet pile cofferdam, construction of wingwalls outside the cofferdam, and construction of the safety barriers in the dry are not required. The Contractor shall design the dewatering system with careful consideration being given to the character of the materials to be encountered as indicated in the subsurface exploration information shown on the contract drawings. The Contractor shall design, construct, and maintain necessary steel sheet pile cofferdam and he shall furnish, install, maintain, and operate all necessary pumping and other equipment necessary for dewatering the work area. All dewatering equipment shall be in first class condition and shall at all times be maintained and operated by the Contractor at the efficiency and capacity required for maintaining the specified area in an unwatered condition. Any dewatering system such as, but not limited to, well–points or deep wells may be used, except that pumping from sumps in the bottom of open excavation will not be permitted. The Contractor will be required to hold surface and subsurface erosion to a minimum during construction. If any movement of sand or other materials into the dewatering system occurs, the Contractor shall change well screens, install filter material, or take any other measures required to prevent movement of subsurface materials. The Contractor shall maintain the water table at least one foot below the bottom of the excavation until excavation and foundation work have been completed and the first lift of concrete has been in place at least 12 hours. During the interval while rock removal and backfilling with compacted sand (directed by the Contracting Officer in conformance with paragraph 2D–3.2.1 "Material to be Excavated") are in progress, the water table shall be maintained no higher than elevation minus 11 feet, m.s.l. The top elevation of the cofferdam shall be such as to protect the inclosed areas against overtopping at water stages which can be expected from water stage data shown on the stage graphs. Water stages and ground water elevations are subject to fluctuations and to the effect of hurricanes.

2E–3.2 Dewatering facilities, including cofferdam, shall be removed upon completion of the construction work required to be performed in the dry except that if deep wells are used for dewatering the Contracting Officer may order that some or all of the casing be preserved and capped for possible future use.

\* \* \* \* \* \*

2E–4. DEWATERING S–334 and S–336.

2E–4.1 *General.* All construction work at the structure, except clearing, grubbing, and stripping, excavation, construction of steel sheet pile cofferdam, placing concrete for tremie seal, placing stone protection outside the cofferdam, construction of retaining walls, wingwalls, and culvert pipes outside the cofferdam, and construction of safety barriers shall be carried on in areas free form water. The Contractor shall construct and maintain steel sheet pile cofferdams and concrete tremie seals as shown on the drawings and as specified herein, and shall furnish, install, maintain, and operate all necessary pumping and other equipment for dewatering the work.

2E–4.2 *Steel Sheet Pile Cofferdam.* The Contractor shall design, furnish, construct, and maintain steel sheet pile cofferdams as specified herein. The cofferdams shall enclose the areas in which the work is to be performed in the dry. The cofferdams shall be constructed to adequate top and bottom elevations to maintain protected areas in a dewatered state and to completely form the concrete tremie seal. Piles may be either new or used. If used piles are furnished, each pile shall be straight, the interlocks shall be undamaged and the nominal web thickness must not be diminished due to

corrosion, abrasion, or other causes by more than 10 percent. Prospective bidders are expected to carefully consider the character of the foundation substrata as indicated on the foundation exploration information shown in the contract drawings, and to make proper allowance as to the piling placement depth necessary to provide cutoff for the concrete tremie seal. Suitable stairways shall be provided to afford safe access to the protected areas.

2E–4.3 *Concrete Tremie Seals.* Concrete tremie seals for the structures shall be placed before the areas enclosed by the cofferdams are unwatered or kept unwatered by pumping. Placement of concrete for the concrete tremie seals shall conform to the requirements of the section CONCRETE of these specifications. Tremie seals shall conform to the details and minimum dimensions shown on the drawings.

2E–4.4 Dewatering facilities shall be removed upon completion of the structures, including portions of the steel sheet pile cofferdam above the top of the tremie seal as shown on the drawings. For cutoff elevation of steel sheet piles in cofferdam, see the contract drawings.

*     *     *     *     *     *

In addition to the specifications, note 4 of drawing 24/3, which depicts S–334, reads: "4. All steel sheet piles of dewatering cofferdam shall be cut off no higher than el.–10.0 (typical all 4 sides)." On drawing 38/3, which depicts S–336, a note reads: "Cut off piles at El.–3.5 all 4 sides of cofferdam." The relevant drawings show the top of the tremie seal for S–334 to be at el.–10.5 and for S–336 to be at el.–4.0.[1]

The parties are in agreement that the cited contract specifications and drawings required that the sheet steel cofferdam piles be cut off at S–336 and that the piles at S–333 could be pulled after construction was completed. The parties disagree only concerning the requirements relating to the sheet steel cofferdam piles on S–334, but it is undisputed that Metro Metals, Inc., did not include in its bid the cost for cutting off the piling on S–334 and it is also undisputed that, prior to bidding for the contract, no one on behalf of plaintiff or Metro Metals, Inc., inquired of any Government representative concerning the piling requirements for S–334.

The Board denied the plaintiff's appeal mainly by reading note 4 of drawing 24/3 and paragraph 2E–4.4 of the specifications to spell out a requirement that the sheet steel cofferdam piling on S–334 be cut off at or about the top of the tremie seal. The Board relied also on the fact that this was the admitted requirement at S–336 and on the fact that Troup Bros., Inc., had had considerable experience with similar structures for the Corps of Engineers in the area, where the practice was to cut off the piling at the top of the tremie seal. The Board concluded: "Appellant assumed a risk when it excluded the cost of meeting this requirement from its bid, without raising a question, and must be left to bear the resulting loss."

■ Plaintiff attacks the Board's conclusion by asserting that the Board failed to make relevant findings of fact on a material issue—whether the portion of the sheet steel cofferdam piling surrounding the tremie seal performed a design function for the S–334 spillway structure. Plaintiff asserts, for example, " * * * the record

---

1. A tremie seal is a large block of concrete which is poured in place at the bottom of the cofferdam before dewatering takes place. Its purpose is to seal the bottom and compensate for the weight of the water which is to be removed where the foundation consists of material such as limerock. Absent the tremie seal, the pressure of the water on the limerock underlying the cofferdam could cause it to be lifted and displaced. Both during the construction and in his testimony in this matter, plain-

tiff's expert, Harl Aldrich, noted that: "The integrity of the tremie seal after the cofferdam is dewatered depends on tight contact between the concrete and steel sheeting." A tremie seal was required by the contract for both S–334 and S–336 where limerock foundations were involved. No tremie seal was required for S–333 where a granular sand base was involved and dewatering was accomplished by the use of wellpoints.

indicates clearly there was no design reason for leaving the piles in place." It is for the purpose of obtaining these findings that plaintiff has not cross–moved for summary judgment and, instead, requests that the court hear the evidence on this issue. Defendant responds to this point on alternative grounds. First, defendant asserts its position that, as the contract clearly required the sheet steel cofferdam piles be cut off on S–334, no relevant issue can exist concerning whether this requirement was necessary from a design standpoint. To preserve the integrity of the bidding process, contractors must bid on the basis of meeting the contract requirements. *Farwell Co. v. United States,* 137 Ct.Cl. 832, 836, 148 F.Supp. 947, 949 (1957); *H.L.C. & Assoc. Constr. Co. v. United States,* 176 Ct.Cl. 285, 367 F.2d 586 (1966). Alternatively, defendant asserts that " * * * the evidence was replete with testimony that there were compelling engineering reasons for cutting the piling instead of pulling it." [2]

Plaintiff is correct that the Board did not reach any design function issue in its decision. In distinguishing the precedent upon which plaintiff relied (*Hensel Phelps Constr. Co.,* Eng BCA No. 3674, 77–1 BCA ¶ 12,475), the Board ruled: "Here, aside from the fact that the Government maintains that pulling the piles would have endangered the structure, an issue the Board does not reach, there was no such discretionary authority and *Hensel Phelps* does not apply." Plaintiff's position on the need for "design" findings stems from the evidence it presented before the Board to the effect that the spillway structures themselves were not designed to depend upon the existence of sheet steel cofferdam piles to render them stable. Plaintiff's witnesses (Messrs. Rowland and Aldrich) stressed, for example, that sufficient details were not provided in the plans to enable the

contractor to design cofferdam systems which would be integrated into the spillway structures for stability purposes. For example, no bottom ("tip") elevations for the cofferdams were provided. Defendant's expert testimony in no way conflicts with plaintiff's in this respect. Defendant's expert, Mr. Foster, agreed that the cofferdam pilings for the spillway structures were not a part of the spillway structures. The defendant's evidence demonstrates that the purpose for the requirement the Corps of Engineers intended to convey in the specifications and drawings, that the pilings around the concrete tremie seal be retained in place after construction, was to avoid the dislodging of subsurface material and the resulting creation of voids around the structure which it was considered that the pulling operation for this part of the piling would cause. This purpose for retaining the cofferdam portions around the tremie seal has no relationship to the design stability of the spillway structures themselves and, because the cofferdams were not part of the structure, plaintiff did not require details such as tip elevation in the plans. Accordingly, no real dispute exists in the record concerning the fact that, as to the spillway structures themselves, the cofferdam pilings served no integral design function. Were a finding necessary on this point alone, no need would exist for a remand to the Board. *Ordnance Research, Inc. v. United States, supra.* As to the issue of the potential adverse consequences of pulling piles from around the tremie seal, considerable conflicting evidence is in the record. If it were necessary to determine whether pulling the pilings from around the concrete tremie seal at the base of the spillway structure at S–334 would dislodge material, create voids and by subsequent action of the surrounding flowing water eventually endanger the structure, a remand to the Board would be required.

**2.** Defendant also contests plaintiff's request that the court supply any factual finding deemed necessary to resolve the case which the Board has failed to make. In reliance upon *United States v. Anthony Grace & Sons,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), defendant asserts that were any additional material finding of fact to be made, the case must be remanded to the Board for this purpose. *But see Ordnance Research, Inc. v. United States,* 221 Ct.Cl. ——, 609 F.2d 462 (1979).

*Koppers Co. v. United States*, 186 Ct.Cl. 142, 150, 405 F.2d 554, 559 (1968). However, this is not a relevant issue. Either the contract required that the cofferdam pilings on S–334 be cut off or plaintiff has, under authorized directions, performed work beyond the terms of the contract for which it should receive extra compensation. Overwhelming evidence in the record demonstrates that the Corps intended to require that the cofferdam pilings be retained around the tremie seal on S–334 after construction was completed, *i. e.*, that the pilings be so cut off.[3] Whether this intent was based upon a correct view of the consequences of pulling piling from around a tremie seal on a limerock foundation has no relevance to the contract interpretation question at issue. Whether protecting the subsurface area by retaining the pilings in place was absolutely necessary from an engineering standpoint or whether the pilings could be pulled without causing problems in the future does not need to be resolved in this action. What must be determined is whether the Corps' intention to require the cutoff of pilings on S–334 was reflected in the contract provisions. If the drafters of the plans and specifications failed to convey this intent to the bidders and instead wrote ambiguously so that another interpretation was reasonably possible, then given reliance on such an alternative reasonable interpretation, the contract must be construed against the writer. *Jefferson Constr. Co. v. United States*, 151 Ct.Cl. 75 (1960). Accord-

ingly, the relevant question is whether the contract is susceptible to a reasonable interpretation that the sheet steel cofferdam pilings may be pulled after construction of S–334. While this is a question of law on which the Board's conclusion is in no way final (41 U.S.C. § 322), it is concluded that the Board's decision is correct. Contract No. DACW17–76–C–0037 cannot reasonably be construed so as to provide that the sheet steel cofferdam pilings can be pulled on S–334.

The key to plaintiff's argument in favor of a pile "pulling" interpretation, despite the specific "cut off" language in note 4 of drawing 24/3 and ¶ 2E–4.4 of the specifications, is based upon the drawing language which states, " * * * shall be cut off no higher than El.–10.0 * * *." This language, reasons plaintiff, would sanction a cutoff at any lower elevation, including at the tip of the cofferdam. If piles could be cut off at their tip, plaintiff argues that they can be pulled. However, the flaw in plaintiff's argument is that, to prevail, its interpretation must be reasonable, not just possible as a hypothetical matter. *Jefferson Constr. Co. v. United States, supra.* Plaintiff's own witnesses, Messrs. Aldrich and Rowland, noted that cutting the piling at the tip, after it had been driven down into the limerock, would be a difficult and impractical operation, involving excavation outside the cofferdam so that a diver could do the cutting safely, and was not seriously considered.[4] Accordingly, plaintiff's inter-

---

**3.** There is evidence in the record that the estimator for the Corps did not, in the Government's prebid estimate, include the cost of cutting off the pilings at S–334, but this does not constitute viable evidence that the Corps did not intend to require the cutoff and resulting retention in place of the pilings around the tremie seal on S–334, as its design witness, Mr. Foster, testified. The Board's conclusion, that in view of serious errors in the Government's estimate " * * * it cannot be relied upon to support either the Government's or Appellant's position," is amply supported by the record.

**4.** Plaintiff's remaining arguments based upon the presence of dotted lines on the drawings and the use of the singular term "cofferdam" in ' 2E–4.4 of the specifications do not make its interpretation of the specific "cut off" language

any more reasonable. Given this specific "cut off" language in the contract, the fact that the other contract structure with a tremie seal (S–336) admittedly required that the piles be cut off, and the fact found by the Board, on the basis of substantial record evidence, that plaintiff had experience with other similar structures in the area where the piling was cut off at the top of the tremie seal, any "omission" plaintiff considered existed in the plans for S–334, such as a specific cutoff elevation, was an obvious matter for prebid inquiry before costs were entirely excluded from the bid. Absent such an inquiry, plaintiff's interpretation was accomplished at its own risk. *Jefferson Constr. Co. of Florida v. United States*, 176 Ct.Cl. 1363, 364 F.2d 420 (1966), *cert. denied*, 386 U.S. 914, 87 S.Ct. 865, 17 L.Ed.2d 786 (1967).

pretation of the contract requirements as to the cutoff of piles on S–334 was not reasonable. Contract No. DACW17–76–C–0037, reasonably construed, required that the sheet steel cofferdam pilings on S–334 be cut off at or near the top of the tremie seal. Plaintiff has not been required to perform work in excess of the contract requirements.

Defendant's motion for summary judgment is allowed and the petition is dismissed.