WILLIAM F. KLINGENSMITH,
INC., Appellant,

v.

UNITED STATES, Appellee.

Appeal No. 83–1131.

United States Court of Appeals,
Federal Circuit.

March 19, 1984.

Victor Klingelhofer, Washington, D.C., argued for appellant.

Branko Stupar, Washington, D.C., was on brief for appellant.

Richard W. Oehler, Washington, D.C., argued for appellee. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C.

Before RICH, BALDWIN and KASHIWA, Circuit Judges.

KASHIWA, Circuit Judge.

Pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.*, appellant (contractor) appeals a decision of the General Services Administration Board of Contract Appeals (the "Board") denying its claim for a contract time extension of 32 calendar days plus impact costs of $72,032. The Board concluded that the delay occurred because of appellant's poor scheduling and not because appellant was required to remove an unexpected smoke tunnel from the site. Because we conclude that the Board failed to address a second issue raised, whether the delay occurred because the government required appellant to change 10 footings to caissons, we vacate and remand the case to the Board for a full hearing on the merits of this issue.

*Background*

In April, 1977, the contractor was awarded a fixed-price contract by the General Services Administration (GSA) to construct a parking garage and ancillary structures. Work began in May, 1977, and the original completion date was February 10, 1978. There were extensive delays in the progress of the work and the building was not accepted by GSA until September, 1978.

As part of the work, appellant was to install the garage foundation, part of which consisted of footings and the remainder of caissons.[1] Appellant's caisson subcontractor, Seaboard, arrived on the site in May and began work in earnest on June 10, 1977. On June 24, after having installed 43 caissons, the subcontractor left the site, returning on July 29. On August 8, Seaboard completed the caisson work.

Originally, 65 caissons were to be installed on the site. In Area 4, level C, unsuitable soil conditions, not marked on the drawings or shown in the test bore samples, required that ten additional caissons be substituted for the originally specified footings. As it became clear that the soil in this area was unsuitable for footings, the government directed appellant to continue excavating the footing holes until good fill was reached. Eventually the government

---

**1.** Footings and caissons are two types of foundation supports. Footings are large concrete blocks, poured directly below the building's grade slabs. Caissons are bell-shaped concrete cylinders, poured deep underground. Caissons are used where the fill dirt under the grade slab is not stable enough to support the building's weight.

ordered appellant to change ten of the footings to caissons. (Change Order 30).

In Area 4, level C, there was also an underground smoke tunnel not indicated on the contract plans or the test borings. A portion of the tunnel had to be removed in order to install caissons and the government's construction manager ordered appellant to remove the tunnel. (Change Order 5).

GSA reimbursed appellant for its direct costs in removing the smoke tunnel and for installation of the ten additional caissons. Appellant also requested a 32 calendar-day delay (23 work-day) contract time extension and delay damages of $72,032 for the time Seaboard was off the site. This request was denied by the contracting officer and the contractor appealed to the GSA Board of Contract Appeals.

The Board denied appellant's claim, concluding that Seaboard was not delayed by the removal of the smoke tunnel because only a maximum of two caissons not yet installed could possibly have been affected by the removal of the tunnel. The Board stated that the delay was caused by appellant's failure to make the areas needed for the caisson work available to Seaboard when it failed to remove unsuitable fill, as provided for in the contract plans. The Board concluded that appellant's poor scheduling was the cause of the delay. On a Motion for Reconsideration, the Board affirmed its decision. This appeal followed.

### I

On appeal, the contractor contends that the Board's decision must be set aside because it failed to address appellant's claim that the government's order to install ten additional caissons was the cause of the delay, its decision being based entirely on the smoke tunnel issue. The government contends that having failed to raise this issue properly before the board, appellant is precluded from asserting it in this forum.

**2.** Change Order 30: Change 10 footings to caissons.

It is well settled that if appellant had not raised this issue before the Board, it could not raise it now for the first time on appeal. *Conrac Corporation v. United States*, 558 F.2d 994, 214 Ct.Cl. 561 (1977); *Ace Construction Co. v. United States*, 401 F.2d 816, 185 Ct.Cl. 487 (1968). The record, however, establishes that appellant did raise this issue to the Board. Appellant's request for extension of time and delay damages, the basis for appellant's claim before the Board, clearly states that the scope of the work covered was "over-depth drilling of caissons and additional caissons drilled due to changed conditions."

Furthermore, appellant's appeal petition to the Board lists several allegations, including:

### V

That the specifications called for 10 spread footings, but due to the latent subsurface unsuitability (lack of a solid bottom), the excavated area had to be refilled and then drilled for caissons in place of the spread footings.

### VI

That the General Services Administration's indecision and lack of direction caused Appellant a 32 calendar day delay while the General Services Administration tried to decide what corrective actions to take.

### VII

That this delay was a result of the changed conditions resulting from Change Order Nos. 18 and 30, and not concurrent with Change Order Nos. 18 and 30.[2]

Appellant's answers to interrogatories, post-hearing brief, and witnesses' testimony also contain similar allegations that the change from footings to caissons was the cause of the delay.

Change Order 18: Remove concrete footings, walls, and unsuitable fill.

The government does not contend that the contractor completely failed to raise this issue, but rather that it raised it in a confusing way. It asserts that after the Board issued its initial decision, which defined appellant's claim as premised upon removal of the smoke tunnel, it was incumbent upon appellant to apprise the Board of its misunderstanding.[3]

■ Appellant, however, did raise this issue in its Motion for Reconsideration. In this motion appellant stated that the Board's decision was contrary to law and to the facts. It then listed a series of allegations in support of the motion, including:

9. It is undisputed that ten (10) footings were changed to caissons requiring substantial additional work, including the removal of additional uncontrolled fill.

10. The finding by the Board that some number of caissons less than ten (10) might have been affected by the additional work ignores the real delay experienced in the project and forgets that the delay of any number of caissons is nevertheless a delay and compensable to WFK.

These statements were clearly sufficient to apprise the Board that this issue was before it. *Cf. John T. Brady & Co. v. United States*, 693 F.2d 1380 (Fed.Cir. 1982). Appellant stated in its claim letter, in its pre- and post-trial briefs and in its Motion for Reconsideration that the delay was caused by the additional caissons. Yet, the Board premised its entire decision on the fact that removal of the smoke tunnel was not the cause of the delay, making only one brief reference to the additional caisson issue.

■ We, therefore, conclude that the issue was properly before the Board, that the Board failed to address it, and that it is now properly before us. We, however, decline to address the merits of appellant's claim at this time. Whether the government actions relating to the changing of the footings to caissons was the cause of the delay is purely a factual issue and the Board is the proper forum to determine the merits of this claim in the first instance. We, therefore, remand this case to the Board for a full hearing on the merits of this issue. *Blinderman Construction Co. v. United States*, 695 F.2d 552 (Fed.Cir. 1982); *Gulf and South American Steamship Co. v. United States*, 500 F.2d 549, 205 Ct.Cl. 135 (1974).

## II

The government also contends that the Board's determination that appellant's own actions delayed the caisson installation was supported by substantial evidence. Therefore, the government asserts that even if it was established that GSA somehow delayed the caisson installation, appellant could still not recover because of concurrent delay.

Appellant contends that the Board's conclusion that appellant delayed the caisson

---

3. The government also cites its own post-trial brief as illustrative of the fact that appellant failed to clearly raise the additional caisson issue. The government states that "[n]ot surprisingly, in its post-trial brief, GSA evidenced an understanding that Klingensmith's petition was that the smoke tunnel caused the delay" and then cites several statements from that brief to support this position:

It is undisputed that Klingensmith is claiming a 32 calendar day time extension through Change Order No. 30 (Finding No. 1). *It is also undisputed that the 32 day extension being claimed is the precise period of time that the caisson subcontractor, Seaboard, was off the job, solely because of the presence of the smoke tunnel (Finding No. 4)* [Emphasis in original].

What the government fails to point out is that immediately before these sentences GSA's brief states:

III. ISSUE

Whether Klingensmith's installation of caissons instead of footings under Change Order No. 30 delayed the project, thereby entitling Klingensmith to time and impact cost.

Two pages later in the same brief it is also stated that:

It is clear therefore that Seaboard left the job site because of Klingensmith's failure to timely remove the uncontrolled fill and not because of the changing of footings to caissons as claimed.

installation because it failed to remove uncontrolled fill is not supported by substantial evidence. Appellant asserts that the Board confused uncontrolled fill, which appellant was contractually required to remove, with unsuitable fill located in the footing holes, which it was not contractually required to remove. Appellant contends that the Board's findings ignore the testimony of the government's own witness which showed that the excavation operations in question did not involve the fill which the contract required to be excavated.

The record shows, however, that there was both documentary evidence and oral testimony that Seaboard could not continue the caisson work because there was uncontrolled fill that needed to be removed and that this was the fill that appellant was contractually required to remove. The daily diaries prepared by the construction manager state that the caisson work was halted until uncontrolled fill could be removed and the testimony of the field superintendent indicated that Seaboard left the site because the uncontrolled fill area *on the drawings* had not been prepared for the caissons. The superintendent also stated that it took appellant approximately one month to remove the uncontrolled fill and that it was only after the area had been properly graded that Seaboard recommenced the caisson installation.

Appellant also argues that there was no evidence to support the Board's conclusion that it was responsible for the delay because of poor scheduling. The government's project manager testified, however, that there was a scheduling problem and that there were neither enough people nor sufficient equipment on the site.

■ We, therefore, conclude that there was substantial evidence to support the Board's finding that appellant's actions delayed the caisson installation and that appellant has not met its heavy burden of establishing that the evidence requires a finding in its favor. *Koppers Co. v. United States*, 405 F.2d 554, 186 Ct.Cl. 142 (1968). Under our standard of review,

even if there is adequate evidence to support alternative findings of fact, the one chosen by the Board is binding on this court regardless of how we might have decided this issue upon a de novo review. *Koppers*, 405 F.2d at 558; *Allied Contractors v. United States*, 176 Ct.Cl. 1095 (1966). The evidence cited above, which was presented to the Board, is sufficient to uphold the Board's factual finding that appellant caused the delay.

■ This conclusion, however, does not mean that appellant cannot prevail. The case the government relies on to support the proposition that a contractor cannot recover when there is concurrent delay, *Merritt-Chapman & Scott Corp. v. United States*, 528 F.2d 1392, 208 Ct.Cl. 639 (1976), did not hold that a contractor could not prove the government's delay separate and apart from that chargeable to the contractor.

■ The general rule is that "[w]here both parties contribute to the delay neither can recover damage[s], unless there is in the proof a clear apportionment of the delay and expense attributable to each party." *Blinderman*, 695 F.2d at 559, quoting *Coath & Goss, Inc. v. United States*, 101 Ct.Cl. 702, 714–715 (1944). Courts will deny recovery where the delays are concurrent and the contractor has not established its delay apart from that attributable to the government.

Therefore, appellant can only recover if it can establish that the government delayed the work by requiring that the footings be changed to caissons and if it can prove how much of the delay was chargeable to the government. Because we are remanding this case to the Board for a determination of the government's role in the delay and because the concurrent delay issue was not briefed by either party, the contractor should be given the opportunity on remand to prove how much of the delay is attributable to each party. *Blinderman*, 695 F.2d at 559.

*Conclusion*

For the reasons stated above, the decision of the Board denying impact costs is

vacated. The case is remanded to the Board to make such findings of fact and conclusions of law as will enable it to determine: (1) whether and to what extent the contractor's work was delayed by the government's order to change ten of the footings to caissons; (2) whether any delays caused by the government were concurrent with or separate from delays chargeable to the contractor; and (3) whether the contractor is entitled to recovery of damages and if so, how much.

VACATED AND REMANDED.