NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1226

WEBB ELECTRIC COMPANY OF FLORIDA, INC.,

Appellant,

v.

Michael D. Griffin, ADMINISTRATOR,
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,

Appellee.

Michael H. Payne, Payne Hackenbracht & Sullivan, of Fort Washington, Pennsylvania, for appellant.

Tara J. Kilfoyle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for appellee. With her on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Appealed from: Armed Services Board of Contract Appeals

Administrative Judge Cheryl L. Scott.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1226

WEBB ELECTRIC COMPANY OF FLORIDA, INC.,

Appellant,

v.

Michael D. Griffin, ADMINISTRATOR,
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

Appellee.

Appeal from the Armed Services Board of Contract Appeals in no. 54293, Administrative Judge Cheryl L. Scott.

_____

DECIDED: November 10, 2008
_____

Before MICHEL, <u>Chief Judge</u>, CLEVENGER, and MOORE, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Appellant Webb Electric Company of Florida, Inc. ("Webb") appeals the determination of the Armed Services Board of Contract Appeals ("Board") that Webb was not entitled to compensation for three periods of delay during Webb's performance of a contract with defendant Michael D. Griffin in his capacity as the administrator of the National Aeronautics and Space Administration ("NASA"). The Board determined that Webb was in part responsible for each of these periods of delay. <u>In re Webb Elec. Co.</u>

of Fl., ASBCA No. 54293, 2007 WL 4179156 (2007) ("Board Decision").   The parties waived oral argument.   For the reasons given below, we affirm.

## I.     BACKGROUND

### A.     The Project

Webb and NASA contracted for Webb to perform electrical work at the NASA John H. Glenn Research Center at Lewis Field ("GRC").   Much of this work is not at issue on appeal; we merely note that prior to the events relevant on appeal, Webb and NASA had modified and extended the time for performance of the contract multiple times.   The dispute centers on transformers (which the parties refer to merely as D2, D3, D5, and D6) that Webb and another contractor, Chappy, were to replace.   Chappy was to replace D6, and Webb was to replace D2, D3, and D5.

Under the contract between Webb and NASA, Webb was to fabricate and install a new D2, D3, and D5 (after an extension of the original deadline) by January 31, 2002. Board Decision, slip op. at 27-28 (¶ 76).   Under the contract between Chappy and NASA, Chappy was to install a new D6 (likewise after an extension) by "the end of February" 2002.   Id. at 26-27 (¶ 70).   Chappy was having problems installing the new D6, and, as a result, NASA transferred some of the cable work for D6 from Chappy to Webb.   Id. at 26-27 (¶¶ 68, 72).   Webb performed some of the preliminary cable work for D2, D3, and D5 in December 2001 and January 2002.   Id. at 27 (¶ 74).   The transformers that Webb built did not perform exactly as specified, but Webb and NASA resolved the issue by extending the warranties for the transformers.   Id. at 27 (¶ 75). Webb expected to deliver D2, D3, and D5 to GRC on February 12, 2002.   Id.   At Webb's

request, NASA and Webb extended Webb's time to install D2, D3, and D5 until September 30, 2002. Id. at 27-28 (¶ 76).

Webb wanted to remove and replace the old D2, D3, and D5 simultaneously, because doing so would allow Webb to work more efficiently and would minimize the number of power outages at GRC. Id. at 23 (¶ 56). As of January 24, 2002, Chappy had not finished installing the new D6, and the old D2, D3, and D5 all remained in place at GRC. Id. at 28-29 (¶ 78). At that time, NASA informed Webb that NASA did "not want to demolish another existing D transformer until the new replacement units arrive on site or the D6 is operational" and determined that transformers would be replaced in the following order: D6, D5, D3, and D2. Id.

Webb and NASA's contract provided that power outages were to be scheduled in advance to minimize disruption of research activities. See, e.g., id. at 9 (¶ 15), 58-59. As of January 31, 2002, NASA had not yet determined when it would allow D5 (the first transformer Webb was to replace) to be switched off so that Webb could replace it. Id. at 29 (¶ 79). On February 13, 2002, Webb delivered the new D2, D3, and D5 to GRC. Id. at 30 (¶ 83). At this point, there was little work that Webb could perform until NASA agreed to power down at least one of D2, D3, and D5. Id. at 30 (¶¶ 81-82). NASA reported the possibility that it would turn D5 off on February 25, 2002. Id. at 30 (¶ 82).

Webb informed NASA that Webb intended to leave GRC because there was insufficient work for Webb to perform until NASA would schedule power outages for the three transformers. Id. at 29-30 (¶¶ 81). Webb departed on February 20, 2002. Id. at 30 (¶ 82). A week later, Webb submitted to NASA a schedule showing removal of the old D2, D3, and D5 in March 2002 and installation of their replacements the following

month. Id. at 30 (¶ 84). The Board did not determine why Webb did not follow this schedule, and the parties point to no explanation in the record.

At NASA's request, Webb returned to GRC for a week in April 2002 to perform some work unrelated to the transformer replacement. Id. at 31 (¶ 86). Webb experienced some personnel turnover and reassignment in May 2002. Id. at 310 (¶ 87). On May 15, 2002, Webb requested D6 be switched off on June 11, 2002, and that D5 be switched off two days later. Id. Webb returned to GRC on June 3, 2002, and resumed cable work for D6 it had taken over from Chappy. Id. at 31 (¶ 88). Minutes from a June 6, 2002 meeting, written by NASA personnel but signed by Webb's Daniel Webb, described Webb's preceding absence as a "winter break." Id.

NASA switched D5 off on June 17, 2002, and Webb began removing it the following day. Id. at 31-32 (¶ 89). The discovery of asbestos-wrapped cables associated with D5 caused a slight delay at the end of June and beginning of July. Id. at 32 (¶ 92). The new D5 was powered up on July 26, 2002, but there were problems with the transformer. Id. at 33, 34 (¶¶ 96, 99).

Eventually, Chappy finished installing the new D6 in September 2002. Id. at 36 (105). Webb completed installation of the new D2 around September 19, 2002, and of the new D3 and D5 around November 12, 2002. Id. at 36, 37 (¶¶ 106, 112).

### B. The Board Decision

Webb requested compensation for numerous delays it alleged were caused by NASA. Id. at 58-59. The Board determined that NASA did not "breach its duties to cooperate and not to hinder or delay," id. at 59, a ruling which Webb does not appeal. However, Webb and NASA's contract contained a standard "Suspension of Work

clause," which the Board determined allowed Webb to recover if Webb could "establish[] that its work was suspended, delayed or interrupted in part for an unreasonable period of time, and that this increased its costs of performance." Id. (citing Chaney & James Constr. Co. v United States, 421 F.2d 728, 732-34 (Ct. Cl. 1970)). The Board found that Webb had proven forty days of unreasonable delay attributable solely to NASA, covering three periods in 2002: February 7 to March 12, June 13 to June 17, and September 9 to September 13. Id. at 63-65.

Webb had also requested compensation for alleged delays covering March 12 to June 12, July 26 to August 12, and September 13 to November 8. Id. The Board did not award Webb compensation for delays during these time periods. Id. These three periods of time are the focus of Webb's appeal.

## II. DISCUSSION

Our review of factual determinations of the Board is cabined by 41 U.S.C. § 609(b), which allows us to overturn a factual determination only if "the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." Webb argues that certain factual findings by the Board in this case are not supported by substantial evidence. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." E.L. Hamm & Assocs. v. England, 379 F.3d 1334, 1338 (Fed. Cir. 2004).

Webb argues that the Board's decision is not supported by substantial evidence, but Webb does not allege that the Board committed any errors of law. We therefore will not review the Board's ruling that NASA did not breach its duties to cooperate and not

hinder or delay; we will consider Webb's substantial evidence challenge only in the context of the sole theory of recovery the Board found applicable, the suspension-of-work clause.

A contractor generally may not recover for a delay under a suspension-of-work clause if it was a cause of the delay. Blinderman Constr. Co., Inc. v. United States, 695 F.2d 552, 557, 559 (Fed. Cir. 1982). The contractor may clearly prove "apportionment of the delay and the expense attributable to each party" and recover for the portion of the delay attributed solely to the government. Id. at 559. Where such an apportionment cannot be made because the causes of delay are "concurrent or intertwined," a contractor "[g]enerally" may not recover. Id.

### A. March 12, 2002 to June 12, 2002

The Board found that NASA prevented Webb from replacing D2, D3, and D5 in early 2002 because Chappy was behind in replacing D6. According to the Board,

> NASA constructively, partially, suspended appellant's work for an unreasonable period of time beginning on 7 February 2002 continuing through appellant's de-mobilization on 20 February 2002. The earliest date GRC had indicated that the D5 would be available was 25 February 2002. At some point thereafter, which we estimate to be 14 days later, on 11 March 2002, appellant's winter break, rather than any cause solely attributable to GRC, kept it offsite.

Board Decision, slip op. at 63.

Webb argues that there was no evidence from which the Board could reasonably conclude that Webb in any way contributed to the delay from March 12, 2002 to June 12, 2002, and that this period should be treated the same as February 7, 2002 to March 11, 2002, for which the Board found a delay attributable solely to NASA. While we agree with Webb that the casual characterization of its absence as a "winter break"

provides only minimal support for the Board's conclusion, Webb does not address that it bore the burden of proof here. See Blinderman, 695 F.2d at 559. The evidence before the Board does not suggest that Webb requested any power outages during March, April, or May 2002. The record also does not show that the work Webb did perform immediately upon its return to GRC in July 2002, cable work for D6, was not work that required any of the transformers to be powered off. There is also no support for Webb's assertion that in July 2002 NASA "relaxed" its restrictions on the number of D transformers which could be switched off at one time.

In the context of the sparse evidence and the allocation of the burden of proof to Webb, we cannot say that there is not evidence from which a reasonable mind could conclude that the delay between March 12, 2002 to June 12, 2002 is attributable in part to Webb. We thus affirm the Board's denial of compensation to Webb for this time period.

B.    July 26, 2002 to August 12, 2002; September 13, 2002 to November 8, 2002

Webb argues the Board erred in not awarding it compensation for a delay solely attributable to NASA from July 26, 2002 to August 12, 2002. However, as NASA points out on appeal, before the Board Webb only alleged that the suspension-of-work clause entitled it to recover for delay "between approximately February 15, 2002 and approximately June 3, 2002." Webb therefore waived any entitlement to compensation for delays during this period.

For the same reason, we reject Webb's argument that it is entitled to recover for a delay from September 13 to November 8.

## CONCLUSION

For the reasons provided above, we affirm the Board's denial of compensation to Webb for alleged delays during March 12 to June 12, July 26 to August 12, and September 13 to November 8, 2002.