**LENRY, INC. and William P. Bergan, Inc.**

v.

**The UNITED STATES.**

No. 445–58.

United States Court of Claims.

Jan. 12, 1962.

Anthony F. LoFrisco, New York City, for the plaintiffs. Albert L. Wigor, New York City, was on the brief.

Melford O. Cleveland, Wilton, Ala., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

JONES, Chief Judge.

Plaintiffs seek to recover additional compensation totaling $20,414.48 because of extraordinary delays experienced by them, through no fault of their own, during the course of their performance of a Government construction contract.

The material facts have been stipulated by the parties and may be briefly stated. Plaintiffs, as joint venturers, agreed with the Army Corps of Engineers by contract styled DA–18–020–ENG–928, and dated June 30, 1955, to reconstruct that part of a retaining wall which had collapsed into an adjoining city street at the Scranton Ordnance Plant, Scranton, Pennsylvania. Work under the contract was scheduled to be completed by November 22, 1955, but the completion date was subsequently postponed to December 25, 1955, by reason of extraordinary delays (hereinafter described) and change orders. Plaintiffs actually completed performance on May 25, 1956, and defendant approved and accepted the work as of that date.

Plaintiffs incurred greater costs during the course of construction than they had originally anticipated. On August 19, 1955, some 18 days after plaintiffs commenced performance under the contract, a flood brought about by a hurricane destroyed parts of certain streets in the city of Scranton adjacent to, as well as in the general vicinity of, the construction site. The significance of this event lies in the fact that some of the city streets intended by plaintiffs to be used as access roads to the construction site were thus rendered unavailable to them for that purpose. As a result, they were compelled to change their intended method of operation, which was not a part of the contract itself, to some unspecified extent. Because of delays incident, to this change in method of operation, plaintiffs incurred the additional costs of performance sued for.

Plaintiffs were granted an extension of time for performance as a result of the damage wrought by the hurricane and flood. However, their claim for ad-

ditional compensation, which was predicated on the theory that they had been deprived of access roads through no fault of their own, and were thus forced into costly delays, was denied at all stages of the administrative process. In a decision rendered on June 26, 1958 (ASB CA No. 4674), the Armed Services Board of Contract Appeals held that plaintiffs were not entitled to additional compensation under Article 3 (the standard "Changes" article) of the contract nor under Article 4 (the standard "Changed Conditions" article) of the contract. This suit followed that determination.

Before reaching the merits of plaintiffs' claim, we wish to point out for the sake of clarity what issues are *not* involved in this suit. To begin with, we recognize that the increased costs of performance incurred by plaintiffs were proximately caused by a hurricane and resulting flood which were completely unforeseen by the parties. That this was an act of God, as that term is understood in its legal sense, we have no doubt. Therefore, unless plaintiffs can show that it is inapplicable to the unique circumstances of this case, we must deny them recovery under the general principle of law that neither party to a contract is responsible to the other for loss occasioned by an act of God.

Secondly, there is no indication in the record that any change was made in the specifications or drawings pursuant to Article 3 of the contract for which plaintiffs have not been compensated in full.

Finally, it must be noted that we have previously held that a changed condition within the purview of Article 4 is a question of fact. Henry E. Wile Co. v. United States, 169 F.Supp. 249, 144 Ct.Cl. 394 (1959). Therefore, since plaintiffs have not alleged that the decision of the Armed Services Board of Contract Appeals was in any way arbitrary, capricious, or unsupported by substantial evidence, we must accord finality to the Board's resolution of this issue against plaintiffs by virtue of the "Disputes" article of the contract and the provisions of the so-called Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C.A. §§ 321, 322.

Nonetheless, plaintiffs insist that they are entitled to the relief sought. It is their position that the contract documents and the drawing of the construction site attached thereto, taken as a whole, establish a warranty on the part of defendant that the streets they selected as access roads would continue to be available to them throughout their performance of the contract. That is to say, the Government *guaranteed* in all events the continued existence and availability of certain city streets intended by plaintiffs to be used as access roads. Thus, regardless of the particular reason for their unavailability, the mere fact that such streets were not so available throughout the life of this contract would be enough to establish liability on the part of defendant for the increased costs here in issue. The single issue for our determination is therefore whether or not such a warranty exists in this case.

The particular contractual provision and specifications relied upon by plaintiffs in support of their theory read as follows:

"Article 4—Changed Conditions.

"The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (1) subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract. The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so materially differ and cause an increase or decrease in the cost of, or the time required for, perform-

ance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. Any claim of the Contractor for adjustment hereunder shall not be allowed unless he has given notice as above required; provided that the Contracting Officer may, if he determines the facts so justify, consider and adjust any such claim asserted before the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Clause 6 hereof.

"GC–3. Site Investigation. The contractor acknowledges that he has satisfied himself as to the nature and location of the work, the general and local conditions, including but not restricted to those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads and uncertainties of weather, river stages, tides or similar physical conditions at the site, the conformation and conditions of the ground, the character of equipment and facilities needed preliminary to and during prosecution of the work. The contractor further acknowledges that he has satisfied himself as to the character, quality and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of this site, including all exploratory work done by the Government as well as from information presented by the drawings and specifications made a part of this contract. Any failure by the contractor to acquaint himself with the available information will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government assumes no responsibility for any conclusions or interpretations made by the con-

tractor on the basis of the information made available by the Government. The Government also assumes no responsibility for any understanding or representations made by its officers or agents during or prior to the execution of this contract, unless (i) such understanding or representations are expressly stated in the contract and (ii) the contract expressly provides that the responsibility therefor is assumed by the Government. Representations which are not expressly stated in the contract and for which liability is not expressly assumed by the Government in the contract shall be deemed only for the information of the contractor.

"GC–4. Operations and Storage Areas:

\*     \*     \*     \*     \*

"c. The Contractor shall, under regulations prescribed by the Contracting Officer, use only established roadways or construct and use such temporary roadways as may be authorized by the Contracting Officer. Where materials are transported in the prosecution of the work, vehicles shall not be loaded beyond the loading capacity recommended by the manufacturer of the vehicle or prescribed by any federal, state or local law or regulation. When it is necessary to cross curbings or sidewalks, protection against damage shall be provided by the Contractor and any damaged roads, curbings, or sidewalks shall be repaired by, or at the expense of the Contractor."

In addition to the above, plaintiffs rely upon the fact that certain city streets at the construction site were in existence at the time of contracting, and defendant incorporated into the contract a drawing showing the location of those streets.

The drawing in question is a part of the record before us as Joint Exhibit #2. Our examination indicates that it

is primarily concerned with construction details relative to the building of the retaining wall itself. However, there is in the upper right-hand corner of the drawing a map of some 3 inches square showing in general the major streets of Scranton and pinpointing the location of the Ordnance Plant within the confines of the city. There is also, in the upper left-hand corner, another larger and more detailed map which depicts the end of the plant site at which the construction was to take place. This latter map details buildings, the retaining wall and the collapsed portion thereof, storm drains, water mains, a driveway, railroad tracts and nearby business establishments, along with the adjacent parts of surrounding streets.

It is apparent that none of the provisions described above contain an express warranty of the type relied upon by plaintiffs. This alone, however, does not dispose of the case at bar.

The thrust of plaintiffs' principal argument is to the effect that the above provisions establish the following: (1) plaintiffs were obligated to visit the construction site to determine the availability of roads; (2) certain roads were in existence at the time of contracting; (3) plaintiffs were required to use established roads; (4) parts of the established roads, in existence at the time of contracting, were shown on the contract drawing; and (5) defendant agreed to compensate plaintiffs for losses sustained by reason of unusual conditions. Ergo, say plaintiffs, defendant impliedly warranted, for the life of the contract, the continued availability of the streets intended by plaintiffs to be used as access roads.

There is a dearth of legal precedent as to whether an implied warranty exists in circumstances similar to those in issue. Be that as it may, however, we cannot accept the validity of plaintiffs' argument. On the contrary, it appears to us that they have done nothing more than use the simple expedient of juxtaposing isolated provisions of the contract in an effort to change the general tenor of the instrument. Each of the above provisions was intended, of course, to perform its own special function. We cannot reasonably conclude that they can be taken out of context and placed side by side to form a peg on which to hang such extraordinary liability as is contended for. In our opinion, there is no telling what obligations defendant might be held to have assumed if such procedure were recognized.

Further, even recognizing the validity of plaintiffs' method of establishing a cause of action, it does not necessarily follow that their conclusion herein flows logically or otherwise from their premises. We have, in this connection, several basic difficulties. For example, there is no indication in the record that defendant knew, or should have known, of the particular method of operation originally selected by plaintiffs, since it formed no part of this contract. Again, it must be remembered that we are concerned with an event which we have recognized to be an act of God. Still another matter of major significance is the fact that the streets here involved were city streets, under the jurisdiction of municipal authorities and in no way under the control of defendant.

Yet, in spite of these difficulties, plaintiffs make no attempt to define the scope of the warranty they find implicit in the contract. They merely allege that there is one governing the circumstances of this case.

Had defendant ever intended to make such a unique and all-encompassing guarantee, and had plaintiffs expected it, we believe they would have so specified in clear and unmistakable language. In the absence of such language, it would require a more substantial basis than that shown by plaintiffs to impose the type of burden contended for upon defendant.

In view of the foregoing, defendant's motion for summary judgment is granted and plaintiffs' motion for summary

judgment is denied. Plaintiffs' petition will be dismissed.

It is so ordered.

REED, Justice (Ret.), sitting by designation, and DURFEE and LARAMORE, Judges, concur.