**OMAN–FISCHBACH INTERNATIONAL (JV), Appellant,**

v.

**Robert PIRIE, Secretary of the Navy, Appellee.**

No. 01–1075.

United States Court of Appeals, Federal Circuit.

Jan. 18, 2002.

Jeffrey M. Young, Moore & Van Allen PLLC, of Raleigh, North Carolina, argued for appellant. With him on the brief was William H. Gammon.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief was Robert C. Ashpole, Navy Litigation Office, Office of the General Counsel, Department of the Navy, of Washington, DC.

Before MAYER, Chief Judge, CLEVENGER and LINN, Circuit Judges.

MAYER, Chief Judge.

Oman–Fischbach International appeals the decisions of the Armed Services Board of Contract Appeals, ASBCA Nos. 41474 (May 15, 1991) and 44195 (July 12, 2000), denying its application for an equitable adjustment for additional costs incurred under its contract with the United States Navy. Because the board properly interpreted the contract, we affirm.

## Background

The United States Navy, Atlantic Division, Naval Facilities Engineering Command awarded Oman a firm fixed-price contract for the construction of fuel tank facilities at Lajes Air Base, Terceira Island, Azores. Prior to bidding, an Oman representative attended a pre-bid site visit on Terceira Island, as suggested by the Navy. During the site visit all prospective bidders were taken on a bus tour that included stops at the location of the tank farm where construction was to take place and other remote locations on the Lajes Base. The bus tour did not travel to all of the waste disposal sites designated in the contract.

The contract required Oman to haul rubbish and debris resulting from its construction work to a base waste disposal site, and required compliance with disposal site regulations. Specification section 02200, paragraph 3.5.3.1 of the contract pertinent to these requirements states:

> Except for soil impregnated with lead, the Contracting Officer shall direct the Contractor to dispose of waste materials to one of the following sites indicated on drawing C–2:
>
> 1) North end of abandon[ed] runway 29
>
> 2) North west end of active runway 34
>
> 3) South of the south tank farm, in the lowland (marsh) area.
>
> Minimal grading and leveling shall be preformed [sic] at each site, as directed by the Contracting Officer.

Oman began work in 1985, and until August of 1987 it was able to use either the waste disposal site south of the south tank farm or other locations not delineated in the contract that were advantageous in both time and cost. In September of 1987, however, these waste sites had reached full capacity and Oman informed the Navy that it would begin using the disposal site at the north end of abandoned runway 29. On the first scheduled day of use, the disposal site at runway 29 was inaccessible because the Portuguese Armed Forces had locked the gate that allowed access to the disposal site through the Lajes Base. The contracting officer then instructed Oman to use the disposal site at the northwest end of active runway 34 via a route around the Lajes Base.

As a result of using the route around the Lajes Base, Oman incurred increased waste transportation costs. It submitted a price proposal for an equitable adjustment in the amount of $897,500. Through a series of reports, the Defense Contract Audit Agency questioned $431,185 of the requested equitable adjustment. The Navy then informed Oman that its price proposal was not in accordance with the Contract Disputes Act because it did not: (1) refer to the proposal as a claim; (2) request a final decision; and (3) reference the Disputes Clause of the contract. Oman filed a notice of appeal based upon the "deemed denial" of its price proposal. The board dismissed this appeal, ASBCA No. 41474 (May 15, 1991), and the Navy subsequently issued bilateral Modification P00052, to settle a subcontractor's claim

and unilateral Modification P00053, in the amount of $215,271.20, to compensate Oman. Oman resubmitted its request for an equitable adjustment in the amount of $531,907 (reflecting the adjustment for the amount awarded in Modification P00053). The contracting officer issued a final decision denying Oman's claim but reaffirmed the amount awarded in Modification P00053. Oman appealed the contracting officer's decision to the board.

The board upheld the contracting officer's decision that Oman was not entitled to an equitable adjustment other than what was awarded in Modification P00053. It held that Oman failed to show that the Navy had affirmatively assumed, by implicit or explicit warranty, the risk of increased costs due to a sovereign act of a government not a party to the contract.

### Discussion

■ We will not disturb the factual findings of the board unless they are fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or unsupported by substantial evidence. 41 U.S.C. § 609(b) (1994); *McClure Elec. Constructors, Inc. v. Dalton*, 132 F.3d 709, 710 (Fed.Cir.1997). On questions of law, this court reviews the board's decisions *de novo*. 41 U.S.C. § 609(b) (1994); *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 314 (Fed.Cir.1994). Notwithstanding this lack of deference on questions of law, we accord the board's legal determinations careful consideration because of its experience in construing government contracts. *See Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 975 (Fed.Cir.1997); *W. Coast*, 39 F.3d at 314.

■ Oman challenges the board's conclusion that there was no warranty of access to the haul route through the Lajes base. In support of its position, Oman argues that paragraph 3.5.3.1 of the contract was silent as to the haul route for access to the waste disposal sites at the north end of abandoned runway 29 and at the northwest end of active runway 34. It further contends that this contractual silence coupled with the government's representations during the pre-bid site visit created an implied warranty of access through the Lajes Base to the waste disposal sites at runways 29 and 34. Oman concedes that the contracting officer had sole discretion under the contract to determine which of the three waste disposal sites were to be used by it; however, because of the warranty of access created by the government, the contracting officer could not order a haul route other than the one through the Lajes Base.

The Navy responds that no implied warranty was created because the express language of the contract carries no clear and direct affirmative promise from which a warranty or guarantee can be inferred. The Navy points out that the contract does not identify the particular haul route to be used in getting to the contract's identified waste disposal sites. Moreover, the "Site Investigation and Conditions Affecting The Work," 48 C.F.R. § 52.236–3 (April 1984), and "Conditions Affecting The Work" clauses, expressly placed the burden on Oman to ascertain the nature and location of the work. The Navy also argues that Oman improperly seeks to rely upon parol evidence to create a contractual warranty.

■ "[A] warranty is an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the promisee of any duty to ascertain the facts for himself." *Dale Constr. Co. v.*

*United States,* 168 Ct.Cl. 692, 699 (1964). Thus, to be successful Oman must establish that the Navy provided a warranty either explicitly or implicitly in its contract by showing that: "(1) the Government assured the plaintiff of the existence of a fact, (2) the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself, and (3) the Government's assurance of that fact proved untrue." *Kolar, Inc. v. United States,* 227 Ct.Cl. 445, 650 F.2d 256, 258 (1981). The board concluded that Oman could not establish a warranty in this case because the contractual language is contrary to such an interpretation. We agree.

Paragraph 3.5.3.1, in section "3.5 Finish Operations," of the contract expressly identifies three potential waste disposal sites to be used by Oman and further provides that the contracting officer will determine which disposal site is to be used by the contractor, as indicated on drawing C 2. This paragraph does not specifically identify the route or routes that can be taken to reach the disposal sites. Oman relies on *D & L Constr. Co. v. United States,* 185 Ct.Cl. 736, 402 F.2d 990 (Ct.Cl. 1968), as support for an implied warranty of access. This reliance is misplaced because this case is strikingly different from *D & L Construction.* There, the court determined that the government warranted that there would be suitable access to the project during the construction period based upon a map depicting the main roads near the construction site, and an assurance letter from the contracting officer stating that the government would make existing streets available. *Id.* at 999. The drawing C–2, included in this contract, depicts various tank farms and partially depicts roads throughout and surrounding the Lajes Base. The drawing does not identify a particular route to be used to reach any of the disposal sites. The alleged extra-contractual representation Oman proffers took place during a pre-bid site visit. Oman argues that an implied warranty was created because the Navy used a route through the Lajes Base during the pre-bid site visit and made general comments about keeping roads clean and obeying traffic regulations.

The contract incorporated several clauses by reference which prevent us from reaching this conclusion. One such standard clause is the "Site Investigation and Conditions Affecting The Work (Apr. 1984)," set forth at FAR 52.236–3. *See* 48 C.F.R. § 52.236–3 (1985). That clause provides in pertinent part:

(a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials; (2) the availability of labor, water, electric power, and roads. . . .

(b) The Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government. Nor does the Government assume responsibility for any understanding reached or representation made concerning conditions which can affect the work by any of its officers or agents before the execution of this contract, unless that understanding or representation is expressly stated in this contract.

Paragraph (a) makes clear that the burden of determining the availability of roads is the responsibility of the contractor, and paragraph (b) disclaims representations made by officers or agents before the execution of the contract. This includes the representations made during the pre-bid site visit.

Additionally, the solicitation for bids included a "Conditions Affecting The Work" clause that provides:

> Bidders should visit the site and take such other steps as may be reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof. Failure to do so will not relieve bidders from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government will assume no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of the contract, unless included in the invitation for bids, the specifications, or related documents.

This language informs potential bidders to take the necessary steps to ascertain the conditions that may affect the cost of completing a project. Oman bore the responsibility to determine what roads would be available to haul rubbish and debris as required by paragraph 3.5.3.1. After this determination, Oman could have calculated its projected expenses and submitted its bid. The third sentence of the clause is exculpatory language, applicable to the representations relied upon by Oman.

■ Oman also asserts that the Navy breached the implied warranty of access to the disposal site at runway 29 when it was denied access through the Lajes Base by the Portuguese Armed Forces. "It is, of course, settled that absent fault or negligence or an unqualified warranty on the part of its representatives, the Government is not liable for damages resulting from the action of third parties." *Dale Constr.*, 168 Ct.Cl. at 698 (citing *United States v. Foley*, 329 U.S. 64, 66–67, 107 Ct.Cl. 710, 67 S.Ct. 154, 91 L.Ed. 44 (1946)). Unless the parties in unmistakable terms agreed to shift the risk of increased costs due to acts by the Portuguese military, no liability on the part of the Navy attaches from such acts. *See Lenry, Inc. v. United States*, 156 Ct.Cl. 46, 297 F.2d 550, 553 (1962); *see also Fort Sill Assoc. v. United States*, 183 Ct.Cl. 301, 309 (1968) (the government is not liable for failing to make a work site available to a contractor at a specified time due to delays experienced by another independent contractor). Oman has not identified any contractual provision under which the Navy assumed the risk of increased costs resulting from any acts of the Portuguese Armed Forces. Moreover, pursuant to the Portugal Technical Agreement of 1984, the Lajes Air Base and its supporting facilities are under the command of the Portuguese Armed Forces. Technical Agreement in Implementation of the Defense Agreement, May 18, 1984, U.S.-Portugal, art. 4, T.I.A.S. No. 12368. This, combined with the fact that neither the Portuguese Armed Forces nor any other entity of the Portuguese government was a party to the contract, prohibits an implied warranty of access to a route through the Lajes Base.

### *Conclusion*

Accordingly, the decision of the Armed Services Board of Contract Appeals is affirmed.

*AFFIRMED.*