ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Contrack International, Inc. | ) ASBCA No. 59917 |
| | ) |
| Under Contract No. W5J9LE-12-C-0017 | ) |

APPEARANCES FOR THE APPELLANT:    Dirk Haire, Esq.
    Jessica Haire, Esq.
      Fox Rothschild LLP
      Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Thomas H. Gourlay, Jr., Esq.
      Engineer Chief Trial Attorney
    Pietro O. Mistretta, Esq.
    Nancy L. Pell, Esq.
      Engineer Trial Attorneys
      U.S. Army Engineer District, Middle East
      Winchester, VA

### OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

This appeal arises out of a building construction contract in Afghanistan. The parties agree that appellant, Contrack International, Inc. (Contrack) suffered a 52-day delay because a large number of vehicles owned by the Afghan National Army (ANA) occupied a portion of the work area. The contracting officer granted appellant 52 additional days. The only issue before us is whether appellant is also entitled to compensation, which it seeks in the principal amount of $2,148,314.68. We deny appellant's motion for summary judgment.[1]

### STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following facts are undisputed unless stated otherwise.

1. On 6 January 2012, the U.S. Army Corps of Engineers, Afghanistan Engineer District South, awarded Contrack a contract in the amount of $62,966,776 for the design and construction of the "Afghanistan National Army (ANA) 2/205 RCC/MP/Transient and Base Additions at Qalat facilities" for the ANA in Zabul Province, Afghanistan (app. mot., undisputed facts (AUF) ¶ 1; R4, tab 3 at 4, tab 6 at 4-8). The contract required

---

[1] This appeal has been consolidated with ASBCA Nos. 59549, 59733 and 59754. The pending motion concerns ASBCA No. 59917 only.

appellant to complete performance within 540 days (AUF ¶¶ 3-4; R4, tab 6 at 35). It also incorporated FAR 52.236-3, SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984) (R4, tab 6 at 9).

2. The contract required appellant to perform work in or around existing facilities. The contract included section 01060, Special Clauses. This section included the following clause:

> 1.11 SCHEDULING OF WORK IN EXISTING FACILITIES
>
> As soon as practicable, but in any event not later than thirty (30) calendar days after award of this contract, the Contractor shall meet in conference with the Contracting Officer, or his duly authorized representatives, to discuss and develop mutual understanding relative to the scheduling of work in and access to the existing facilities where work has to be performed under this contract, so that the Contractor's proposed construction schedule is coordinated with the operating and security requirements of the installation.

(R4, tab 3 at 110, tab 6 at 3)

3. Although the exact nature of the facilities on site at the time of contract execution is not clear, the solicitation contained numerous references to existing facilities. For example, in a section governing unexploded ordinance, the solicitation stated, "The existing site has had numerous construction projects including underground utilities and foundations etc., and has been occupied and under security for an extended period of time" (R4, tab 3 at 6). It is not clear to what extent the ANA controlled these facilities and to what extent American/coalition forces controlled them.

4. During the course of the project, Contrack experienced a 52-day delay because vehicles on the project site owned by the ANA were not removed in a timely manner. Specifically, there were 200 to 300 abandoned and inoperable vehicles, including passenger cars and tanks, CONEX storage containers, and garbage. The government referred to this area as the "boneyard." (Gov't resp. at 4, ¶¶ 1-2)

5. Prior to award, the government conducted a site visit on 21 November 2011 (gov't resp. at 5, ¶ 8). The government asserts in its brief that the vehicles were visible on the site visit (gov't resp. at 10). Contrack did not dispute this in its reply but contends it is "irrelevant" (app. reply br. at 4). Accordingly, it is undisputed that the vehicles were visible during the site visit.

6. As a result of the delay, the contracting officer issued Modification No. P00006, which extended the performance period by 52 days but provided no additional compensation (AUF ¶¶ 11-12; R4, tab 114).

7. There is a material dispute as to whether the U.S. Government had the authority to move the vehicles from the boneyard. The government contends through the declaration of its lead project engineer that it lacked not only the authority, but also the equipment and manpower to move the vehicles (Williams decl. ¶¶ 9-10). The documents cited by appellant fail to demonstrate that the government had the authority, or had promised explicitly in the contract, to move the vehicles (AUF ¶ 8).

8. The parties agree that the government had the responsibility to facilitate or coordinate movement of the vehicles (AUF ¶ 7; gov't resp. at 5, ¶ 7, at 7, 9). However, there is a material dispute as to whether the government made appropriate attempts to facilitate movement of the vehicles.

9. Appellant cites various documents in support of its assertion that the government failed to make enough effort to facilitate the movement, including a 22 April 2013 email from a U.S. Army major to the lead project engineer that reads in part:

> 2/205 has put in a request through Corps for support. Corps has not place [sic] much emphasis on the move.
>
> ....
>
> While I acknowledge that this is a hot issue for many of those involved, I am tracking that this is not a hot issue on the ANA BDE or ANA Corps either. If it was, they would have made the BDE move by now.

(R4, tab 170)

10. Appellant reads the word "Corps" in this email to mean the U.S. Army Corps of Engineers (USACE). Thus, to appellant the email states that, despite a request, USACE had not placed much emphasis on moving the vehicles because it was not a hot issue for USACE. (App. br. at 4)

11. The government counters by asserting that 205 is a reference to a corps in the ANA, which includes a second brigade (2/205) (gov't br. at 2-3). The government reads the email to mean that the 205 Corps of the ANA had not placed much emphasis on the move and that it was not a hot issue for the ANA at either the Corps or brigade level. We find that the government's interpretation is more than plausible based on the language of the email ("While I acknowledge that this is a hot issue for many of those involved,...this is not a hot issue on the ANA BDE or ANA Corps").

3

12. There are several other documents in the record that counter appellant's assertion that the government failed to facilitate movement of the vehicles. To the contrary, these documents indicate that both parties recognized that the ANA had to move the vehicles and that they repeatedly requested that the ANA do so (R4, tab 110 at 2, tab 112 at 2, tab 156 at 2, tab 157 at 4, tab 158 at 2, tabs 161, 162 at 4, tab 164 at 1, tab 167 at 5, tabs 168, 177). Accordingly, there is a material dispute of fact and this issue must be resolved at a hearing

13. Contrack submitted a certified claim on 6 October 2014 seeking $2,148,314.68 (R4, tab 107). It does not assert in the claim that it had to move the vehicles or pay for their movement. Rather, the damages in the claim consist primarily of extended job site overhead ($1,674,905.00), along with insurance, attorney/consultant fees, overhead, and profit (*id.* at 6).

## DECISION

### Standard of Review

Pursuant to Board Rule 7(c)(2), we look to Rule 56 of the Federal Rules of Civil Procedure for guidance in deciding motions for summary judgment. Under FED. R. CIV. P. 56(a), the Board may grant summary judgment if there is no genuine dispute as to any material fact. In considering such a motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### Appellant Has Failed to Carry Its Burden

In its brief, Contrack raises the following theories: 1) the government breached its duty to cooperate and not hinder its (Contrack's) performance by, among other things, failing to cooperate in the relocation of the vehicles (app. br. at 5-8); 2) that relocation of the vehicles was solely in the hands of USACE and that it is therefore entitled to compensation for the delay (*id.* at 8-10); and 3) the government impliedly warranted access to the site (*id.* at 10-12). Because we have already rejected Contrack's assertion that there are undisputed facts demonstrating that the government either had the authority to move the vehicles or failed to facilitate ANA movement of the vehicles, we deny its motion with respect to the first two theories. However, we will discuss the warranty theory.

We start with the contract language. As we stated (SOF ¶ 2), the contract provided that appellant and the contracting officer would meet within 30 days of award "to discuss and develop mutual understanding relative to the scheduling of work in and access to the existing facilities where work has to be performed...so that the Contractor's proposed construction schedule is coordinated with the operating and security requirements of the installation." It is somewhat difficult to interpret this clause because, as we observed above, we do not know the precise extent of the existing facilities, nor do we know who controlled them. The government has made non-conclusory allegations that the ANA

4

exerted sufficient control to populate the site with inoperable vehicles (visible at the time of the site visit) and had the final say on moving them. The Rule 4 documents cited by the parties also speak of an "Afghan army base commander" who met with USACE and Contrack to discuss the movement of the vehicles (R4, tab 110 at 2). This suggests that the ANA exerted some measure of authority at the site and that part of the coordination referred to in the contract would be with the ANA. Accordingly, we do not read this clause as a representation by the government that it enjoyed full control of the site or that it had plenary authority to move Afghan equipment.

Accordingly, we must decide whether the government or Contrack should bear the cost of the ANA's failure to move vehicles off the project site. As such, it is a question of third-party delay. The law has not been favorable to contractors making such claims.[2]

*Gilbane Building Co. v. United States*, 333 F.2d 867 (Ct. Cl. 1964) is a notable case in this line. In this case, the government represented in the specifications that work being performed on the project site would be completed and ready for the plaintiff on 22 November 1954. The prior contractor suffered weather delays, however, and the plaintiff could not begin work until the following spring. *Id.* at 868-69.

The Court of Claims held that the language stating that the site would be ready by 22 November 1954 did not create a warranty that the site would be ready by that date. Rather, the court held that "it is not within the realm of normal expectation that the Government would voluntarily stand as a guarantor of the performance of his contract by another contractor within the specified time." *Gilbane*, 333 F.2d at 869 (citing *H.E. Crook Co. v. United States*, 270 U.S. 4 (1926)). The court looked for express language in the contract warranting the availability of the site. Finding none, the court held that the plaintiff was not entitled to recover. *Id.* at 870.

Similarly, in *Oman-Fischbach International (JV) v. Pirie*, 276 F.3d 1380 (Fed. Cir. 2002), the contract required appellant to haul debris from its construction work to one of three disposal sites indicated in the contract. (The project was at a base in the Azores controlled by the Portuguese Armed Forces. *Oman-Fischbach*, 276 F.3d at 1385). Nearly two years after award of the contract, one of the disposal sites reached full capacity. When appellant attempted to use one of the other sites, it found that the Portuguese Armed Forces had locked the access gate, which ultimately required appellant to transport the waste using a route around the base, resulting in increased

---

[2] One commentator has advised contractors contemplating such claims that "The cases are stacked so heavily against contractors that the odds of winning are minuscule. A better financial decision might be to go to the local track and put the money on a high-odds horse." RALPH C. NASH, *Recovery for Government Promises that a Third Party Will Perform: The Most Difficult Claim*, 22 No. 11, THE NASH & CIBINIC REP. ¶ 69 (Nov. 2008).

costs. *Id.* at 1382. Oman-Fischbach appealed to the Board, which held a merits hearing and then denied the appeal. *Oman-Fischbach International, a Joint Venture*, ASBCA No. 44195, 00-2 BCA ¶ 31,022 at 153,216.

The Federal Circuit affirmed our decision. The court of appeals held that to be successful Oman-Fischbach had to establish that the Navy provided a warranty either explicitly or implicitly in its contract by showing that: "(1) the Government assured the plaintiff of the existence of a fact, (2) the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself, and (3) the Government's assurance of that fact proved untrue." *Oman-Fischbach*, 276 F.3d at 1384 (quoting *Kolar, Inc. v. United States*, 650 F.2d 256, 258 (1981)). The court of appeals examined various clauses in the contract, including the Site Investigation and Conditions Affecting the Work clause that is also in the contract at issue in this appeal (SOF ¶ 1). The court of appeals held that this clause made it clear that it was the responsibility of the contractor to determine the availability of the roads. *Oman-Fischbach*, 276 F.3d at 1384-85.

The Federal Circuit also rejected appellant's implied warranty of access theory. It observed that when it comes to third-party delays, it is "settled that absent fault or negligence or an unqualified warranty on the part of its representatives, the Government is not liable for damages resulting from the action of third parties." *Oman-Fischbach*, 276 F.3d at 1385 (quoting *Dale Constr. Co. v. United States*, 168 Ct. Cl. 692, 698 (1964)). Thus, the court of appeals held that "[u]nless the parties in unmistakable terms agreed to shift the risk of increased costs due to acts by the Portuguese military, no liability on the part of the Navy attaches from such acts." *Id.* Because appellant failed to identify any such language, the Federal Circuit affirmed our decision.

Earlier this year, the Federal Circuit issued its decision in *Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, No. 2015-5083, 2016 WL 4375654 (Fed. Cir. Aug 17, 2016), in which the plaintiff encountered a different sort of third-party delay. In that case a contractor constructing a facility in Afghanistan experienced a delay in the delivery of materials after Pakistan closed its border with Afghanistan. *Zafer*, 2016 WL 4375654, at *1. *Zafer* is different in some respects than this appeal in that: 1) it involved a delay at the border, not at the project site; 2) the contractor never asked for a specific number of days in extended time; and 3) the opinion of the court of appeals discusses some theories not before the Board in the present motion. Nevertheless, it contains a holding significant to the present matter.

The plaintiff in *Zafer* contended that the U.S. Government was responsible for the border closure because its actions caused Pakistan to close the border and because it prolonged negotiations to reopen it. The Federal Circuit rejected these arguments, finding it to be undisputed that Pakistan had closed the border. It held that "the U.S. Government is not responsible for the sovereign acts of a foreign nation." *Zafer*, 2016 WL 4375654, at *1. The government has asked us to come to a similar conclusion in this appeal with respect to Afghanistan (gov't br. at 11-12).

6

Based on this precedent, we conclude that Contrack is not entitled to judgment as a matter of law on its implied warranty theory. The government has raised the defense that the delay at issue was caused by the ANA. While we will wait until after the merits hearing to make a final determination on this issue, the government's non-conclusory allegations must be credited for summary judgment purposes. Thus, for present purposes we conclude that the actions, or inaction, of the ANA caused the 52-day delay. Contrack has not identified any contract language in which the government expressly warranted that the ANA would remove the vehicles from the site. *Gilbane* and *Oman-Fischbach* teach that the government cannot be held liable for delays of third parties absent unmistakable language to the contrary. *Gilbane*, 333 F.2d at 869; *Oman-Fischbach*, 276 F.3d at 1385. Contrack has not identified any such contract language. And to the extent not already clear from *Oman-Fischbach*, the Federal Circuit held in *Zafer* that the government is not liable for delays caused by foreign governments. *Zafer*, 2016 WL 4375654, at *6.

Further, as we observed above, the Federal Circuit in *Oman-Fischbach* rejected the claim based in part on the same site investigation clause as in the present contract. Applying the *Oman-Fischbach* analysis to the present matter, we conclude that it was Contrack's obligation to ascertain who had responsibility for removing the vehicles and how it would be done by the time it needed access to that area. Contrack's claim is arguably weaker than that of appellant in *Oman-Fischbach*, because the obstruction in this appeal was visible at the time of the site visit in this appeal (SOF ¶ 4). By contrast, the Portuguese Armed Forces did not lock the gate in *Oman-Fischbach* until after the award. *Oman-Fischbach*, 00-2 BCA ¶ 31,022 at 153,214. Thus, Contrack was on notice of this potential problem at the time of contract execution and accepted the risk that the ANA would not provide access in a timely manner, just as appellant in *Oman-Fischbach* accepted the risk that the Portuguese Armed Forces would restrict access at some time in the future.

Accordingly, there is no basis on which we could grant Contrack summary judgment for delays caused by the ANA.

The Cases Cited by Appellant are Distinguishable

The cases cited by Contrack do not change our opinion. It relies primarily on *D&L Construction Co. v. United States*, 402 F.2d 990 (Ct. Cl. 1968); and *Blinderman Construction Co. v. United States*, 695 F.2d 552 (Fed. Cir. 1982). The Federal Circuit rejected the applicability of *D&L* in *Oman-Fischbach* because it concluded that the facts in *D&L* were strikingly different. *Oman-Fischbach*, 276 F.3d at 1384. *D&L* involved a claim for closing access roads. The Court of Claims concluded that the government had warranted access to the site based both on contract language and a letter from the contracting officer stating that the government would make existing streets available. *Oman-Fischbach*, 276 F.3d at 1384 (citing *D&L*, 402 F.2d at 999). Contrack has not identified any comparable facts in the present matter.

7

*Blinderman* involved a contract to install meters in the apartments of naval personnel at a naval base. The contractor experienced delays after it notified occupants that it needed to perform work in the apartment, most commonly because the occupant was not at home at the scheduled time. The contractor would then notify the Navy project manager but in some cases the contractor did not receive access to the apartment until several days had passed. *Blinderman*, 695 F.2d at 555-56. The Federal Circuit held that the contractor discharged its contractual obligation when it provided the occupants the notice required by the contract. When the contractor failed to gain entry despite notice, the court of appeals held that the Navy had an implied obligation to provide access to the apartment. To the extent that the Navy failed to provide access within a reasonable time, the contractor was entitled to an increase in the cost of performing. *Id.* at 557. The court remanded the appeal to the Board to determine whether the Navy had unreasonably delayed the contractor. *Id.* at 559.

*Blinderman* does not support Contrack's contention that the government is liable for delays caused by the ANA at an ANA facility. To the extent that there were unreasonable delays in *Blinderman*, they occurred as a result of the actions or inactions of Navy personnel (namely, the project manager and/or the occupants of the apartments) at Navy apartments on a Navy base. In other words, these were not third-party delays and *Blinderman* does not speak to this appeal.

## CONCLUSION

Appellant's motion for summary judgment is denied.

Dated: 19 October 2016

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59917, Appeal of Contrack International, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals